UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SIOUX FALLS SD II FGF, LLC, | \* | CIV 21-4043 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| -vs- | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| COURTHOUSE SQUARE, LLP, PATRICK | \* | |
| VESEY and KOREY KALLSTROM, | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Sioux Falls SD II FGF, LLC ("FGF"), brought this diversity action on March 26, 2021, alleging two counts of breach of contract, declaratory judgment, negligent misrepresentation, fraud, and piercing the corporate veil. (Doc. 1.)

Defendants Courthouse Square, LLP ("Courthouse"), Patrick Vesey ("Vesey") and Korey Kallstrom ("Kallstrom") filed a Motion to Dismiss. (Doc. 6.) The motion has been fully briefed and the Court heard argument at a hearing on October 13, 2021. For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part.

## BACKGROUND

FGF is a Delaware limited liability company with its principal place of business in Cleveland, Ohio. Buyer FGF entered into a Purchase and Sale Agreement with seller Courthouse. Vesey and Kallstrom are partners of Courthouse. Vesey executed the Purchase Agreement on behalf of Courthouse.

Under the Purchase Agreement, Courthouse agreed to sell and FGF agreed to purchase, for the price of $21,625,000.00, a parcel of land situated at 313/325 S. 1st Avenue, Sioux Falls, South Dakota 57104, together with all improvements thereon, as identified in the Purchase Agreement (the

"Premises"). The closing of the sale and purchase of the Premises occurred on April 3, 2020 (the "Closing").

In connection with the Closing, Courthouse assigned to FGF its interest in five tenant leases of space within the Premises, including four leases of office space to U.S. government agencies (the "Government Leases"). (Doc. 1-2, Assignment and Assumption of Leases.)

Section 6.0(c) of the Purchase Agreement states, in part:

Seller has not received notice from any Tenant that the Property or any portion thereof is not in full compliance with the terms and provisions of the Leases or is not satisfactory for such Tenant's purposes .... No Tenant ... is entitled to any special work (not yet performed) or consideration (not yet given) in connection with its tenancy under its Lease.

(Doc. 1-1, Purchase Agreement, p. 18.) In its Complaint, FGF alleges that the Government Leases include provisions that require the lessor to maintain and repair the equipment and systems at the Premises; to provide such equipment and systems in a reliable and safe manner; and to provide "suitable" elevators at the Premises (the "Elevators") that conform to American Society of Mechanical Engineers (ASME) A17.1 Safety Code for Elevators and Escalators. According to FGF, upon information and belief, multiple employees of the tenants under the Government Leases complained about the performance of the Elevators, and those complaints prompted the federal General Services Administration ("GSA") to inspect the Elevators on February 26, 2020. FGF asserts that Vesey and Kallstrom knew about the complaints about the Elevators and the GSA inspection of the Elevators prior to the Closing Date. On the Closing date of April 3, 2020, GSA sent an email to the property manager for the Premises, Covis Properties, indicating that the Elevators did not meet code, the location and configuration of the Elevator controls were faulty, and the Elevator controls were exposed to excessive dust, temperature swings and water intrusion.[1] FGF contends that Kallstrom was an employee of Covis Properties at all relevant times.

FGF alleges that Defendants were aware of but did not disclose the complaints regarding the Elevators, GSA's inspection of the Elevators, or the results of the GSA inspection at any time prior

---

[1] At this early stage in the litigation, the record does not reveal whether or not Courthouse received the GSA's April 3 email before the Closing on the property.

2

to Closing on April 3, 2020. Defendants first informed FGF of the GSA inspection and its findings three days after Closing, on April 6, 2020. Subsequently, FGF received a recommendation that the Elevators be replaced. FGF replaced the Elevators at an estimated cost of $1,100,294.00. Defendants have refused FGF's request for indemnification and have denied any liability for the Elevator replacement.

The first two causes of action in FGF's Complaint allege claims for breach of contract (breach of the Purchase Agreement and breach of the Assignment of Leases). In Count III, FGF seeks a declaratory judgment in its favor under the Indemnification Provision of the Assignment of Leases. Count IV asserts a negligent misrepresentation claim. Fraud is alleged in Count V. In Count VI, FGF seeks an order piercing the corporate veil to find the individual defendants liable for the damages cause by Courthouse's alleged fraud.

Defendants ask the Court to dismiss all six counts in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state claims upon which relief may be granted.

## DISCUSSION

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010); *Brooks v. Midwest Heart Group*, 655 F.3d 796, 799 (8th Cir. 2011). Courts consider "plausibility" by " ' draw[ing] on [their own] judicial experience and common sense.' " *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts must " 'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.' " *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010)).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts primarily look to the complaint and " 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting

3

the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

"On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017). *See also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."). Copies of the Purchase and Sale Agreement, the Assignment of Leases and the Seller's Certificate are attached to the Complaint as Exhibits A, B and C. The Court will consider these documents in ruling on Defendants' Rule 12(b)(6) motion to dismiss.

**B.    Contract Language**

FGF relies on the following language in the documents attached to its Complaint.

Under Section 6.0(c) of the Purchase Agreement, Seller represented and warranted:

> The Seller is the "landlord" under the Leases and owns legal and beneficial title, as lessor, to the Leases, and the rents and other income thereunder. . . Seller has not received any notice of termination, default, or audit under any of the Leases, nor is it aware of any default under any of the Leases. There are no existing or uncured defaults by Seller or by any Tenant under any of the Leases. No Tenant has asserted any defenses, set-offs, or counterclaims with respect to its tenancy or its obligation to pay rent, additional rent, or other charges pursuant to the Leases . . . . Seller has not received notice from any Tenant that the Property or any portion thereof is not in full compliance with the terms and provisions of the Leases or is not satisfactory for such Tenant's purposes. . . . . No Tenant . . . is entitled to any special work (not yet performed) or consideration (not yet given) in connection with its tenancy under its Lease.

The Assignment of Leases contains an Indemnification Provision:

> Assignor hereby agrees to indemnify, hold harmless and defend Assignee from and against any and all obligations, liabilities, costs and claims (including reasonable attorney's fees) arising as a result of or with respect to any of the Leases that are attributable to the period of time prior to the date of this Assignment. Assignee hereby agrees to indemnify, hold harmless and defend Assignor from and against any and all obligations, liabilities, costs and claims (including reasonable attorney's fees) arising as a result of or with respect to any of the Leases that are attributable to the

4

period of time from and after the date of this Assignment.  This paragraph shall survive the closing of the contemplated transaction and the assignment of the Leases.

Finally, in the Seller's Certificate executed and delivered to FGF at Closing on April 3, 2020, Courthouse certified that the representations and warranties contained in Section 6.0 of the Purchase Agreement were true and correct as of the Closing Date.

## C.      ANALYSIS

### 1.      Count I:  Breach of Contract - Purchase Agreement

Section 11.12 of the Purchase Agreement provides that it is "governed by, and construed in accordance with, the substantive federal laws of the United States and the laws of the state in which the property is located," and the parties appear to agree that South Dakota law applies to FGF's claims in this case.

In South Dakota, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dept. of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010).  Contract interpretation is a question of law which is to be determined by the Court. *Yarcheski v. Reiner*, 669 N.W.2d 487, 495 (S.D. 2003).  Whether the language of a contract is ambiguous is therefore a question of law for the Court. *Ziegler Furniture And Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350, 355 (S.D. 2006).  "A contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pauley v. Simonson*, 720 N.W.2d 665, 668 (S.D. 2006) (citation omitted).  Furthermore "a contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Ziegler*, 709 N.W.2d at 355. When a contract is clear and unambiguous, a court cannot go beyond the provisions of the contract. *Gettysburg School District 53-1 v. Larson*, 631 N.W.2d 196, 200 (S.D. 2001).

Section 6.0(c) of the Purchase Agreement states that "Courthouse has not received notice from any Tenant that the Property or any portion thereof is not in full compliance with the terms and provisions of the Leases or is not satisfactory for such Tenant's purposes."  FGF alleges that Courthouse breached the Purchase Agreement because this specific warranty or guarantee by Courthouse was not true.  FGF interprets the Purchase Agreement as requiring Courthouse to

5

disclose to FGF prior to the Closing that its tenants complained about the performance of the Elevators, that the GSA inspected the Elevators on February 26, 2020, and that the GSA sent an email on April 3, 2020 to Covis Properties indicating that the Elevators do not meet code (if discovery reveals that the email was received before the Closing on April 3.)

According to Courthouse, even if it knew about the tenants' complaints and the GSA inspection of the Elevators prior to the Closing, the language of the Purchase Agreement did not require it to disclose this information to FGF. Courthouse cites to language in Sections IV and X of the Purchase Agreement. Under Section 10.1, FGF agreed that it was buying the Premises "as is . . . with all faults" and with no warranties regarding the physical condition of the Premises." Section 4.0 of the Purchase Agreement sets forth the Due Diligence items requested by FGF. According to Courthouse, had FGF desired information on maintenance complaints or tenant inspections "they easily could have added such items to Schedule 4.0. Their failure to do so is evidence that Courthouse was under no obligation to make such disclosures to FGF." (Doc. 7, p. 8.)  FGF counters that Courthouse made clear representations and warranties in Section 6.0(c) that it was not aware of any tenant complaints and therefore no additional due diligence was required by FGF in regard to the Elevators.

The Court concludes that the Purchase Agreement is not ambiguous. Though the "as is" clause states that FGF accepts the property "as is, where is, with all faults," it also begins with the statement "[e]xcept as expressly set forth in this agreement" and ends with the statement "except to the extent expressly provided otherwise in this agreement." (Doc. 1-1, Section 10.1.) The warranty in Section 6.0(c) of the Purchase Agreement, providing that Courthouse "has not received notice from any Tenant that the Property or any portion thereof is not in full compliance with the terms and provision of the Leases or is not satisfactory for such Tenant's purposes" should be given meaning. The only reasonable interpretation is that the Premises was sold "as is," with the exception of the specific warranties made in Section VI of the Purchase Agreement, including Courthouse's warranty in Section 6.0(c).

Regarding Courthouse's argument that FGF could have demanded the tenants' complaints or inspected the Elevators under the "due diligence" section of the Purchase Agreement, the Court

concludes that Courthouse's alleged notice of tenant complaints about the Elevators and the GSA's inspection are excluded from FGF's due diligence by the warranty language in Section 6.0(c).

Assuming the factual allegations of FGF's complaint to be true and construing the same in favor of FGF, FGF has plausibly stated a claim that Courthouse breached the warranty in Section 6.0(c) of the Purchase Agreement by alleging that Courthouse had notice from tenants that the Elevators were not satisfactory, was aware of the GSA inspection, and possibly was aware of the GSA report prior to the Closing. Accordingly, the motion to dismiss Count I is denied.

### 2. Count II:  Breach of Contract – Assignment of Leases

As set forth above, the parties executed an Assignment and Assumption of Leases (the "Assignment of Leases") in conjunction with the Purchase Agreement. (Doc. 1-2.)  The relevant language from the Assignment of Leases reads as follows:

> [Courthouse] hereby agrees to indemnify, hold harmless and defend [FGF] from and against any and all obligations, liabilities, costs and claims (including reasonable attorney's fees) arising as a result of or with respect to any of the Leases that are attributable to the period of time prior to the date of this Assignment.

The Assignment of Leases also imposes the same obligation on FGF, as follows:

> [FGF] hereby agrees to indemnify, hold harmless and defend [Courthouse] from and against any and all obligations, liabilities, costs and claims (including reasonable attorney's fees) arising as a result of or with respect to any of the Leases that are attributable to the period of time from and after the date of this Assignment.

FGF alleges that the Indemnification Provision requires Courthouse to indemnify FGF for the cost of replacing the Elevators.  Courthouse argues that, unless the contract states otherwise, the duty to indemnify applies only if a third party asserts a claim against FGF, and it does not apply to FGF as one of the contracting parties.

Under South Dakota law, indemnity "provisions are generally recognized to provide indemnity when third parties bring an action against the indemnitee, but not, as here, when the dispute is between the two contracting parties." *Icehouse, Inc. v. Geissler*, 636 N.W.2d 459, 466 (S.D. 2001).  South Dakota recognizes an exception to this general rule when "the clear language of the parties' agreement controls and may indicate an intent to the contrary." *Black Hills Excavating Servs. v. Retail Constr. Servs.*, 877 N.W.2d 318, 324 (S.D. 2016).  An indemnity agreement, like any

7

other contract, is to be construed according to the principles applied in the construction or interpretation of contracts. *See, e.g., Black Hills Excavating*, 877 N.W.2d at 324–25. Therefore it must be clear that FGF and Courthouse intended the indemnification provision to apply to the litigation between them.

Under South Dakota law, the intent of the parties is presumed to reside in the language they choose to use in their agreement. *Pesicka v. Pesicka*, 618 N.W.2d 725, 727 (S.D. 2000). "If that intention is clearly manifested by the language of the [Agreement], it is the duty of this court to enforce it." *Id.* (quoting *In Re Estate of Stevenson*, 605 N.W.2d 818, 821 (S.D. 2000)). In the instant case, there is no language in the Assignment of Leases that indicates the parties intended the indemnification provision to apply to litigation between the parties. The Assignment of Leases does not include indemnification for a breach of the contract. Rather, there is an obligation to defend third party claims. Thus, FGF is not entitled to indemnification from Courthouse under the Assignment of Leases. *See, e.g., Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F.Supp. 203, 218–19 (S.D.N.Y. 1997) (indemnification clause does not cover costs of litigation between parties because it is not "unmistakably clear" that they are covered, and the provision "may easily be read to protect [party] from claims to its rights and interests by third parties") (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 21 (2d Cir. 1996)). For this reason, FGF's claim for contractual indemnification from Courthouse in Count II of the Complaint is dismissed.

### 3. Count III: Declaratory Judgment – Assignment of Leases

FGF asks the Court to declare the rights of the parties under the indemnification provision of the Assignment of Leases. As the Court explained above, the indemnification clause does not apply to this litigation between the parties, and thus FGF's claim for declaratory relief in Count III is also dismissed.

### 4. Count IV: Negligent Misrepresentation

The South Dakota Supreme Court has identified five elements of the tort of negligent misrepresentation:

> [N]egligent misrepresentation occurs whenever one party makes (1) a misrepresentation, (2) without reasonable grounds for believing the statement to be true, (3) with the intent to induce a particular action by another party, and the other

party (4) changes position with actual and justifiable reliance on the statement, and
(5) suffers damage as a result.

*Fisher v. Kahler*, 641 N.W.2d 122, 126–27 (S.D. 2002).  The court further explained that "the relationship of the parties, *arising out of contract or otherwise*, must be such that in morals and good conscience the one has the right to rely upon the other for information and the other giving the information owes a duty to give it with care." *Meyer v. Santema*, 559 N.W.2d 251, 254 (S.D. 1997) (emphasis added) (quoting *Rumpza v. Larsen*, 551 N.W.2d 810, 814 (S.D. 1996)).

Courthouse argues that the negligent misrepresentation claim should be dismissed for two reasons.  First, Courthouse contends that it owed no duty of care to FGF.  Courthouse cites an Eighth Circuit case applying Minnesota law to dismiss a negligent misrepresentation claim because it found "no duty 'for purposes of a negligent misrepresentation tort threshold' between parties to a commercial transaction negotiation at arms length."  *Kellogg Square P'ship v. Prudential Ins. Co. of Am.*, 63 F.3d 699, 703 (8th Cir. 1995) (quoting *Safeco Ins. Co. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 872 (Minn. Ct. App. 1995)).  However, it does not appear that the Minnesota Supreme Court has decided "whether a negligent misrepresentation claim can be brought when the alleged misrepresentation was made by one party to an arm's-length commercial transaction." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 370 n.7 (Minn. 2009).  Neither party in this case has cited a South Dakota Supreme Court decision regarding whether a negligent misrepresentation claim can be brought between parties to an arm's-length commercial transaction.  The Court finds that, at the motion to dismiss stage, FGF has stated a plausible claim for negligent misrepresentation by alleging throughout its Complaint that Courthouse had a duty to disclose the notices of the poor condition of the Elevators that it allegedly received from its tenants, the GSA inspection of the Elevators, and possibly the GSA's email about the condition of the Elevators if it was received prior to the Closing.

Second, Courthouse argues that the negligent misrepresentation claim should be dismissed because it is barred by the economic loss doctrine.  The economic loss doctrine preserves the line between tort and contract, providing that:

If tort claims are based on duties that are imposed by contract, then under the economic-loss rule, contract law provides the remedies for economic losses.  The

> economic-loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship. In other words, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach-of-contract claim.

74 Am. Jur. 2d Torts § 24 (2015). The Supreme Court of South Dakota has explained the rationale for the economic loss doctrine:

> The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort. The doctrine draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, negligently caused, financial injury. The economic loss doctrine, therefore, sets forth that regardless of whether a tort duty may exist between contracting parties, the actual duty one party owes to another for purely economic loss should be based exclusively on the contract to which they agreed and assigned their various risks.

*Kreisers Inc. v. First Dakota Title Ltd. Partnership*, 852 N.W.2d 413, 421 (S.D. 2014) (internal citations omitted).

It appears that the South Dakota Supreme Court has not decided whether the economic loss doctrine bars a negligent misrepresentation claim. Courthouse points out that "courts in jurisdictions which have adopted the economic loss doctrine routinely have declined to carve out an exception for claims of negligent misrepresentation." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995) (collecting cases). Courthouse says this Court should also decline to entertain such an exception. However, other courts have recognized negligent or fraudulent inducement as an exception to the economic loss doctrine. *See, e.g., McKesson Med.-Surgical, Inc. v. Kearney*, 271 F. Supp. 2d 827, 829 (E.D. Va. 2003) (holding economic loss doctrine did not bar "negligent fraud in the inducement, a subset of constructive fraud," noting that the representations that formed the basis of the claim were made prior to the formation of the contract). Here, too, at least some of the alleged representations or omissions that form the basis of FGF's negligent misrepresentation claim occurred prior to the formation of the contract.

FGF urges this Court to find that the South Dakota Supreme Court would not bar negligent misrepresentation claims under the economic loss doctrine. In support of this argument, FGF cites this Court's opinion in *Northwestern Public Service v. Union Carbide Corp.*, 115 F.Supp.2d 1164 (D.S.D. 2000). There, this Court addressed whether the plaintiff's fraud claims against a manufacturer of an allegedly defective pipe used by the plaintiff in its gas distribution system were barred by the economic loss doctrine. After an in-depth analysis of the law, this Court predicted that, the economic loss doctrine notwithstanding, the South Dakota Supreme Court would afford a tort remedy for "fraud claims which concern the quality or characteristics of goods sold under a contract." *Id.* at 1170. A negligent misrepresentation claim was not alleged so the Court did not need to address whether the South Dakota Supreme Court would bar such a claim under the economic loss doctrine.

In *South Dakota Wheat Growers Ass'n v. Chief Indus., Inc.*, 337 F. Supp. 3d 891 (D.S.D. 2018), the district court held that negligent misrepresentation claims should not be barred by the economic loss rule. *Id.* at 904–05.

In the present case, discovery may show that the only basis for FGF's claims is in contract, but the Court finds the economic loss doctrine does not bar FGF's negligent misrepresentation claim at this stage in the litigation. Depending on discovery, Courthouse could revisit this issue in summary judgment.

Taking FGF's allegations in support of its negligent misrepresentation claim in the light most favorable to FGF, it has pled a plausible cause of action for negligent misrepresentation, and Courthouse's motion to dismiss Count IV is denied.

### 5. Count V: Fraud

The essential elements of common law fraud are:

> [T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made ; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he [or she] did in fact rely on it and was induced thereby to act to his [or her] injury or damage.

*Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 391 (S.D. 1999) (quoting *Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d at 404 (S.D. 1998)).

11

Federal Rule of Civil Procedure 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). Rule 9(b) must be applied in conjunction with the general pleading requirements of the Federal Rules. *See Abels v. Farmers Commodities Co.*, 259 F.3d 910, 920 (8th Cir. 2001). Furthermore, this Court has said that "[a] plaintiff 'need not plead fraud with complete insight before discovery is complete.' " *Northwestern Pub. Serv.*, 115 F.Supp.2d at 1171 (quoting *Gunderson v. ADM Investorerv., Inc.*, 2000 WL 1154423 at *3 (8th Cir. Aug.16, 2000) (unpublished opinion)). This Court has also said that when deciding whether a pleading is sufficient a court must determine whether there was adequate notice to the adverse party in order to enable the adverse party to respond. *Id.*

Courthouse argues that the fraud claim should be dismissed due to FGF's alleged failure to comply with the particularity requirement of Rule 9(b). Courthouse asserts that the allegations pleaded by FGF "on information and belief" have not been pleaded with the required particularity. "Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement. When the facts constituting the fraud are peculiarly within the opposing party's knowledge, however, such allegations may be pleaded on information and belief." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009) (citations omitted). Claims pleaded "on information and belief" are sufficient under Rule 9(b) if they are accompanied by a statement of the facts on which the belief is based. *Id.*

In this case, FGF's allegations made on "information and belief" are based on facts either uniquely within Defendants' knowledge or based on communications to which FGF was not a party. FGF alleges that tenants in the building complained about the Elevators, that the GSA inspected the Elevators, and that the individual defendants who are partners of Courthouse were aware of these facts prior to the Closing. FGF contends that an inspection revealed that the Elevators did not meet code and needed to be replaced. It is unknown whether Courthouse received the GSA's report that the Elevators did not meet code before the Closing. FGF asserts that Courthouse's fraudulent misrepresentations or omissions required FGF to incur the cost of replacing the Elevators. The Complaint includes facts that support the allegations and alert Defendants to the nature of the alleged fraud and the basis of FGF's claims. The Court finds that the Complaint adequately pleads the fraud

12

cause of action as stated on "information and belief." *See Drobnak*, 561 F.3d at 783–84; *see also Abels*, 259 F.3d at 920 (noting that where "plaintiff is not a party to a communication, particularity in pleading may become impracticable").

Rule 9(b) does require more specificity when pleading fraud than for pleading other causes of action. *Abels*, 259 F.3d at 920. When alleging a claim of fraud a plaintiff must specify "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Id.* (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)). Because FGF's allegations of fraud do include the details required by Rule 9(b) and the Eighth Circuit, namely the time, place, identity of the persons committing the fraud, what was misrepresented, and how FGF was harmed, Count V of the Complaint is not dismissed.

### 6. Count VI: To Pierce the Corporate Veil as to Defendants Vesey and Kallstrom

In Count VI, FGF alleges that Vesey and Kallstrom used Courthouse to perpetrate a fraud on FGF and then divested the business entity of all assets by distributing the proceeds of the fraud to its partners. Specifically, FGF alleges that Vesey and Kallstrom are partners of Courthouse, whose sole asset was the Premises; that Courthouse distributed the proceeds of the sale to its partners, including Vesey and Kallstrom; that Courthouse was insufficiently capitalized for its representations and warranties under the Purchase Agreement; that Courthouse distributed the proceeds of the sale to its partners and became insolvent after the sale of the Premises without discharging its obligations to FGF under the Purchase Agreement; that Vesey and Kallstrom had knowledge of and directed Courthouse's misrepresentations and omissions to induce FGF's reliance and ultimately profit from the Closing; and that Courthouse was a facade for the individual dealings of Vesey and Kallstrom.

FGF seeks an order piercing the corporate veil to find Vesey and Kallstrom liable for the damages caused by Courthouse's fraud.

In South Dakota, corporations and their shareholders are generally deemed to be distinct legal entities "until there is sufficient reason to the contrary." *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 111 (S.D. 1994) (citations omitted). The doctrine of piercing the corporate veil is an equitable doctrine used by courts to disregard the distinction between a corporation and its shareholders in

order to prevent fraud or injustice. *Id.* at 112. The South Dakota Supreme Court considers six factors to determine if equity demands piercing the corporate veil: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; (5) fraudulent misrepresentation by corporate directors; and (6) use of the corporation to promote fraud, injustice or illegality." *Brevet Int'l, Inc. v. Great Plains Luggage Co.*, 604 N.W.2d 268, 274 (S.D. 2000).

Defendants point out that veil-piercing is not a separate cause of action. However, at this motion to dismiss stage, the Court will examine whether the facts pleaded by FGF state a cause of action against the individually-named defendants on a theory of piercing the corporate veil.

FGF alleges fraudulent misrepresentation by corporate directors, use of the corporation to promote fraud, and undercapitalization. In its brief opposing the motion to dismiss, FGF points out that Courthouse's capitalization prior to the sale of the Property is currently unknown. FGF cites *Cup O'Dirt, LLC v. Badlands Airtime, LLC,* for the proposition that "questions concerning insolvency and undercapitalization are not normally reached until the summary judgment stage, if then." 2020 WL 475606, at *8 (D.S.D. Jan. 29, 2020) (citing *Baatz v. Arrow Bar*, 452 N.W.2d 138, 142 (S.D. 1990)).

When deciding a motion to dismiss, the Court must construe the Complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. It is a close call, but at the Rule 12(b)(6) stage, accepting the allegations in the Complaint as true, with all reasonable inferences drawn in FGF's favor, the allegations are sufficient to support a plausible claim for veil piercing. The motion to dismiss Count VI is denied. What discovery may or may not reveal remains to be seen. Accordingly,

**IT IS ORDERED**:

1.     That Defendants Courthouse Square, LLP, Patrick Vesey and Korey Kallstrom's Motion to Dismiss (Doc. 6) is granted as to Plaintiff's claims for Breach of Contract – Assignment of Leases in Count II of the Complaint, and Declaratory Judgment in Count III of the Complaint. The motion to dismiss is denied as to Counts I, IV, V and VI.

14

2.    Defendants shall file an Answer within twenty-one (21) days of receipt of this
      Order.

Dated this 14th  day of December, 2021.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

15